UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

Case No. 17-cr-20821
Hon. Matthew F. Leitman

v.

JACOURTNEY T. HARRIS,

       Defendant.

_____/

## OPINION AND ORDER RESOLVING SENTENCING GUIDELINES DISPUTE

On January 24, 2018, Defendant Jacourtney Harris pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In connection with Harris' sentencing, a dispute arose over whether a guilty plea that Harris entered in 2014 in state court to a charge of unarmed robbery constitutes a "conviction" for a "crime of violence" as those terms are used in § 2K2.1(a)(4) of the United States Sentencing Guidelines (the "Guidelines").

Harris entered the earlier plea under Michigan's Holmes Youthful Trainee Act (the "HYTA"), Mich. Comp. Laws § 762.11. That statute allows a juvenile to avoid a formal conviction by pleading guilty to an offense and successfully completing his sentence. Harris completed his sentence for unarmed robbery, and the state court dismissed the case against Harris without entering a judgment of conviction.

1

With respect to sentencing in this case, if Harris' prior plea under the HYTA qualifies as a "conviction" for a "crime of violence," then Harris' base offense level under the Guidelines is 20. U.S.S.G. § 2K2.1(a)(4). If the plea does not amount to a "conviction" for a "crime of violence," then Harris' base offense level is 14. U.S.S.G. § 2K2.1(a)(6).

At the sentencing hearing, the Court determined that unarmed robbery under Michigan law is not a "crime of violence" under § 2K2.1(a)(4) of the Guidelines, and Harris' base offense level is therefore 14. The Court orally explained the basis for that ruling, and the Court now issues this written Opinion and Order to clarify, supplement, and more fully explain its decision.

**I**

The Guidelines provision at issue, U.S.S.G. § 2K2.1(a)(4), provides that a defendant's base offense level for a felon in possession conviction is 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." Harris argues that his unarmed robbery plea should not result in a base offense level of 20 under this provision for two reasons. First, Harris contends that his plea under the HYTA did not result in a "conviction." Second, he argues that unarmed robbery is not a "crime of violence." The Court addresses each argument separately below.

## II

Harris first argues that his prior guilty plea to unarmed robbery is not a "conviction" under U.S.S.G. § 2K2.1(a)(4) because he successfully completed his sentence and, at that point, had his civil rights "restored" under the HYTA. (Harris Sentencing Mem., ECF #19 at Pg. ID 77.) In support of this argument, Harris relies upon 18 U.S.C. § 921(a)(20). That statutory provision excludes certain offenses from the term "crime punishable by imprisonment for more than one year" as used in a chapter of the United States Code concerning criminal firearms offenses.[1] The statute provides:

> The term "crime punishable by imprisonment for a term exceeding one year" does not include —
>
> > (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
> >
> > (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> *What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil*

---

[1] The statutory provision specifically defines the term as used in Chapter 44 of Part 1 of Title 18 of the United States Code.

> rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added).

Harris focuses on the italicized language above. He contends that "conviction" in § 2K2.1(a)(4) should be read in light of, and consistently with, this language. Such a reading, Harris argues, yields the conclusion that a defendant who has successfully completed a HYTA sentence and had his civil rights "restored" has not been "convicted" of a crime for purposes of § 2K2.1(a)(4). At the sentencing hearing, counsel for Harris candidly acknowledged that she could not cite any case in which any court has reached that conclusion.

The Court is not yet prepared to accept Harris' argument that, by operation of 18 U.S.C. § 921(a)(20), a defendant has not been "convicted" as that term is used in § 2K2.1(a)(4) where he has pleaded guilty to an offense under the HYTA, successfully completed his sentence, and had his civil rights restored. Before the Court could reach that conclusion, it would need to be persuaded, among other things, that "conviction" in § 2K2.1(a)(4) should be read in light of the statute cited by Harris rather than in light of the definition of "convicted of an offense" in another provision of the Guidelines themselves: § 4A1.2(a)(4). That Guidelines provision states that "'[c]onvicted of an offense,' for purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere." U.S.S.G. § 4A1.2(a)(4). If "conviction" in § 2K2.1(a)(4) is read

in light of the definition in §4A1.2(a)(4) , then a guilty plea entered under the HYTA would appear to count as a "conviction."

Another potential obstacle in Harris' way is the Sixth Circuit's suggestion in *United States v. Pritchett*, 749 F.3d 417, 423-24 (6th Cir. 2014), that a guilty plea fits within the ordinary meaning of the term "conviction," and its holding in that case that a guilty plea followed by a diversionary sentence (without entry of a judgment of guilt) constituted a conviction under 21 U.S.C. § 841(b)(1)(A). Before the Court could accept Harris' argument here, Harris would have to explain why *Pritchett* does not compel the conclusion that his plea under the HYTA qualifies as a "conviction" under § 2K2.1(a)(4).

There may well be a basis for distinguishing *Pritchett* and for reading § 2K2.1(a)(4) in light of 18 U.S.C. § 921(a)(20), as Harris proposes, *see, e.g., United States v. Canelas-Amador*, 837 F.3d 668, 671-674 (6th Cir. 2016) (distinguishing *Pritchett* and construing the term "conviction" in § 2L1.2(b)(1)(A)(ii) of the Guidelines in light of definition of that term in 8 U.S.C. § 1101(a)(48)(A), rather than in light of Guidelines' provisions defining that term), but Harris has not fully and sufficiently developed the argument in favor of his reading of the Guidelines. So, while the Court may one day conclude that a plea under the HYTA does not amount to a "conviction" under § 2K2.1(a)(4), the Court does not so hold today.

### III

Harris next argues that his base offense level should not be 20 under U.S.S.G. § 2K2.1(a)(4) because unarmed robbery under Michigan law – the offense to which Harris pleaded guilty under the HYTA – is not a "crime of violence" under U.S.S.G. § 2K2.1(a).  The Court agrees.

### A

Section 2K2.1(a) incorporates the definition of "crime of violence" from § 4B1.2(a) of the Guidelines. *See* U.S.S.G. § 2K2.1, cmt. n.1. That provision, in turn, defines "crime of violence" as any felony that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). The first clause of the definition, § 4B1.2(a)(1), is commonly known as the elements clause, and the second clause, § 4B1.2(a)(2), is commonly known as the enumerated offenses clause.

In order to determine whether unarmed robbery qualifies as a "crime of violence" under either of these clauses, the Court must "apply a 'categorical' approach, meaning that [the Court] must look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the

6

crime." *United States v. Yates*, 866 F.3d 723, 728 (6th Cir. 2017) (quoting *United States v. Ford*, 560 F.3d 420, 421-22 (6th Cir. 2009)).   Under the categorical approach, the Court "must first assume that [the defendant's] conviction rested upon [nothing] more than the least of the acts criminalized, and then determine whether even those acts would qualify as a crime of violence under the guidelines." *Id.* (internal quotations omitted).   However, "the minimum culpable conduct criminalized by the statute includes only conduct to which there is a realistic probability, not a theoretical possibility that the state would apply the statute." *Id.* (internal quotations omitted).

**B**

**1**

The Court first addresses whether unarmed robbery is a "crime of violence" under the elements clause.  As noted above, an offense is a "crime of violence" under that clause only if it involves the use, attempt to use, or threat to use "physical force." U.S.S.G. § 4B1.2(a)(1).  In the leading decision of *Johnson v. United States*, 559 U.S. 133, 140 (2010), the United States Supreme Court held that "physical force" is "*violent* force – that is, force capable of causing physical pain or injury to another person."[2] (emphasis in original). In order to determine whether unarmed robbery is

_____

[2] The Supreme Court in *Johnson* defined the term "physical force" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), but the Sixth Circuit has "not hesitated to use authority interpreting the elements clause in the Armed Career

a "crime of violence" under the elements clause, the Court must assess "the minimum level of force criminalized by" the Michigan unarmed robbery statute "and then resolve whether that conduct constitutes … violent force" as used in *Johnson*. *Yates*, 866 F.3d at 728.

The unarmed robbery statute under which Harris pleaded guilty provides that a person "who, in the course of committing a larceny of money or any other property that may be the subject of larceny, uses force *or* violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years." Mich. Comp. Laws § 750.530(1) (emphasis added). This language suggests that an unarmed robbery does not require "violent force." Indeed, the Michigan Legislature's decision to separate "force" and "violence" with the disjunctive word "*or*" indicates that a defendant's use of force is sufficient to sustain a conviction even if the force does *not* involve violence. *See People v. Kowalski*, 803 N.W.2d 200, 208, n.11 (Mich. 2011) ("'Or is … a disjunctive [term], used to indicate a disunion, a separation, an alternative.").

The Michigan Legislature's use of the phrase "force *or* violence" is especially significant because the version of this statute in effect until a series of amendments in 2004 provided that a person committed unarmed robbery where he stole from

---

Criminal Act in interpreting the same phrase in the Guidelines." *United States v. Maynard*, 894 F.3d 773, 774 (6th Cir. 2018) (quoting *United States v. Patterson*, 853 F.3d 298, 305 (6th Cir. 2017)).

another person "by force *and* violence." *United States v. Matthews*, 689 F. App'x 840, 844, n.1 (6th Cir. 2017) (citing and quoting prior version of the statute) (emphasis in original). The Legislature's use of "and" in the earlier statute linked the required force to a measure of violence. The Legislature's decision to replace the word "and" with the word "or" in the 2004 amendments evidences its changed intent to include theft by force but without violence as an unarmed robbery. *See People v. Wright*, 437 N.W.2d 603, 606 (Mich. 1989) ("It is axiomatic that when the Legislature effects a change in the provisions of a statute, a presumption arises that the Legislature intends a change in the substantive law.").[3]

---

[3] As the Government correctly notes, in *People v. Randolph*, 648 N.W.2d 164 (Mich. 2002) – discussed extensively below in Section III(B)(2) – the Michigan Supreme Court *erroneously* quoted the text of the pre-2004 version of the unarmed robbery statute as prohibiting theft by "force or violence" (instead of "force and violence"), and the court then referred several times in its analysis to robbery as involving "force or violence" rather than "force and violence." (Gov't Supp. Br., ECF #20 at Pg. ID 92.) This Court concludes that (1) the Michigan Supreme Court's references to "force or violence" in its analysis resulted from its erroneous quotation of the text of the prior statute and (2) that court did not mean to suggest that "force or violence" means the same as "force and violence." Had the Michigan Supreme Court meant to equate those two clearly different terms, it would have explained its basis for doing so. Indeed, that court would not have *sub silentio* departed from its general understanding that the Michigan Legislature's use of the word "and" reflects that the two separate conditions linked by that term "must be met." *Karaczewski v. Farbman Stein & Co.*, 732 N.W.2d 56, 59 (Mich. 2007), *abrogation by statute on other grounds recognized in Brewer v. A.D Transport Express, Inc.*, 782 N.W.2d 475 (Mich. 2010). *Randolph* does not undercut the significance of the Legislature's change from "force and violence" to "force or violence."

Critically, "the use of *any* force against a person during the course of committing a larceny, which includes the period of flight, is sufficient under the [amended] statute." *People v. Passage*, 743 N.W.2d 746, 748 (Mich. Ct. App. 2007) (emphasis added).[4] And "'force,'" as used in the amended statute, "is *nothing more* than the exertion of strength and physical power." *Id.* (emphasis added) (quoting Random House *Webster's College Dictionary* (2001)). Thus, "force" under the amended statute is not tied in any way to a potential for physical pain or injury – the essential feature of "violent force."

Consistent with the understanding that "any" force is enough to support an unarmed robbery conviction, *Passage*, 743 N.W.2d at 748, the Michigan Court of Appeals has affirmed unarmed robbery convictions under the amended statute where the defendant's conduct involved less than "violent force." For instance, in *People v. Anderson*, 2007 WL 1224025, at *1 (Mich. Ct. App. Apr. 26, 2007), the Court of Appeals affirmed an unarmed robbery conviction in a "[m]atter that essentially involve[d] a purse snatching, wherein an unarmed man ripped a purse off the shoulder of a victim." The court found sufficient evidence of force because the defendant "tugged and yanked on [the victim's] purse, took it away from her, and

_____

[4] As a published decision of the Michigan Court of Appeals issued after November 1, 1990, *Passage* is binding upon all Michigan courts other than the Michigan Supreme Court and a special panel of the Court of Appeals. *See* Mich. Ct. Rule 7.215(J)(1).

rode away in a vehicle driven by another man." *Id.* And in *People v. Scott*, 2018 WL 2166047, at * 1 (Mich. Ct. App. May 10, 2018), the Court of Appeals found the force element of unarmed robbery satisfied by evidence that the defendant "shook the victim's arm, causing her [cell] phone to fall to the ground."

Notably, the Michigan Court of Appeals also affirmed an unarmed robbery conviction based upon a garden-variety purse snatching under the earlier, more demanding version of the unarmed robbery statute. *See People v. Hicks*, 675 N.W.2d 599, 608 (Mich. Ct. App. 2003). In *Hicks*, the court found sufficient evidence of force where "the victim felt a tug on her purse strap, was pulled backward, reflexively lurched forward, and tried to turn her body to maintain possession of her purse." *Id.* Given that the minimal force involved in this ordinary purse snatching satisfied the prior statute, it would certainly be enough force to satisfy the current version of the statute. *See People v. Elerson*, 2009 WL 2448286, at *2 (Mich. Ct. App. Aug. 11, 2009) (affirming unarmed robbery conviction under current version of statute because, among other things, the facts underlying the conviction were "similar" to the facts in *Hicks*).

In sum, because the concept of "force" under Michigan's unarmed robbery statute is not linked to a potential for physical pain or injury, and because the Michigan Court of Appeals has affirmed unarmed robbery convictions involving force that lacked the meaningful potential to cause such pain or injury, the crime of

unarmed robbery in Michigan is not a "crime of violence" under the elements clause of § 4B1.2(a).[5] This Court joins the two other district courts that have reached this same conclusion. *See United States v. Lamb*, 2017 WL 730426, at *4 (E.D. Mich. Feb. 24, 2017) (holding that in light of the Michigan Court of Appeals decisions in *Passage* and *Hicks*, unarmed robbery under Michigan law is not a "crime of violence"); *United States v. Ervin*, 198 F.Supp.3d 1169, 1180-81 (D. Mt. 2016) (same).

The Sixth Circuit reached this same result with respect to Ohio's unarmed robbery statute in *Yates*, and that statute mirrors Michigan's current unarmed robbery statute (as construed by the Michigan Court of Appeals). "The force criminalized by [the Ohio statute] is defined as '*any* violence, compulsion, or constraint physically exerted by *any* means upon or against a person.'" *Yates*, 866 F.3d at 728 (quoting Ohio Rev. Code Ann. § 2901.01(1)(1)) (emphasis in original).

---

[5] In determining the content of Michigan law, this Court must look first to decisions of the Michigan Supreme Court. *See Grantham and Mann, Inc. v. American Safety Prod., Inc.*, 831 F.2d 596, 608 (6th Cir. 1987) (applying this rule in a civil diversity action). But where that court has not issued a controlling decision on an issue, decisions of the Michigan Court of Appeals are "`dat[a] for ascertaining [Michigan] law which [are] not to be disregarded by a federal court unless it is convinced by other persuasive data that the [Michigan Supreme Court] would decide otherwise.'" *Id.* (quoting *Commissioner v. Estate of Bosch*, 387 U.S. 464, 465 (1967)). For the reasons explained in this Opinion and Order, this Court is not persuaded that the Michigan Supreme Court would decide the questions presented in the above-cited Michigan Court of Appeals decisions differently than did the intermediate appellate court.

And the Ohio Court of Appeals, like the Michigan Court of Appeals, has held that the force involved in a run-of-the-mill purse snatching is sufficient to support an unarmed robbery conviction under the Ohio statute. *See id.* at 729-30 (collecting Ohio Court of Appeals decisions affirming unarmed robbery convictions arising out of purse snatchings).[6]  The Sixth Circuit explained that this line of Ohio purse-snatching cases compelled the conclusion that unarmed robbery under Ohio law was not a "crime of violence" under the elements clause of § 4B1.2(a). *See id.*  The Sixth Circuit also highlighted that several "[o]ther circuits have similarly held that, when a state robbery statute criminalizes minimal force, such as the force incidental to purse-snatching, a conviction under that statute is not a 'crime of violence' under the guidelines force clause…." *Id.* at 730-31 (collecting cases).  The Sixth Circuit's holding in *Yates* that unarmed robbery under Ohio law is not a "crime of violence" under the elements clause of § 4B1.2(a) strongly supports the conclusion that unarmed robbery under Michigan law – which includes ordinary purse snatchings – is likewise not a "crime of violence" under the elements clause.

---

[6] The language used by the Ohio Court of Appeals to describe the level of force in these purse-snatching cases is similar to the language used by the Michigan Court of Appeals in the purse-snatching cases cited above. *See, e.g.*, *In re Boggess*, 2005 WL 3344502 at *1 (Ohio Ct. App. Dec. 6, 2005) (affirming unarmed robbery conviction where defendant "ran up to [the victim], grabbed her purse, jerked her arm back, and kept running"); *State v. Juhasz*, 2015 WL 5515826 (Ohio Ct. App. Sept. 18, 2015) (recognizing that "Ohio courts have held that a struggle over control of an individual's purse has been sufficient to establish the element of force").

The Government cites substantial authority in support of its contention that the force required under Michigan's current unarmed robbery statute is "violent force," but that authority cannot support the weight the Government places upon it. The Government relies heavily on the decision of the Michigan Supreme Court in *People v. Randolph*, 648 N.W.2d 164 (Mich. 2002). In *Randolph*, the court addressed whether a defendant committed an unarmed robbery when he used force *after* taking property but before reaching temporary safety. The court held that that conduct did not violate the statute. It ruled that "the force used to accomplish the taking underlying a charge of unarmed robbery must be contemporaneous with the taking." *Id.* at 167. The court "base[d its] holding on the language of the unarmed robbery statute and the common-law history of unarmed robbery." *Id.* The "common-law history" was especially important because the then-effective version of the unarmed robbery statute was "derived from the common law." *Id.*

In a footnote to the court's opinion, it included quotes from leading common law commentators suggesting that a robbery includes "violence" or a threat of "injury." *Id.* at 168, n.6 (internal quotations omitted). The Government leans heavily on this footnote – suggesting that in light of it, the Michigan unarmed robbery statute applies only where an offender uses "violent force." (Gov't Supp. Br., ECF #20 at Pg. ID 91-94.)

For several reasons, the Court concludes that *Randolph* does not control here.

First, the court in *Randolph* construed the pre-2004 version of the unarmed robbery statute that, in contrast to the current statute, applied to a theft accomplished through "force *and* violence." For all of the reasons explained above, the Michigan Legislature's change to "force *or* violence" in the 2004 amendments to the statute is strong evidence that the Legislature intended to criminalize robberies accomplished through the use of *any* force.

Second, other aspects of the 2004 amendments undermine the connection that *Randolph* drew between the statute and the common law of robbery that the Government relies upon here. These other amendments (1) abrogated the specific holding in *Randolph* that the force used in a robbery must occur at the same time as the taking and (2) expanded the scope of robberies to include certain attempt offenses which were not considered robbery at common law. As amended, the statute now provides (with the newly-added language underlined):

> (1) <u>A</u> person who, <u>in the course of committing a larceny of any money or other property that may be the subject of larceny, uses</u> force <u>or</u> violence <u>against any person who is present,</u> or <u>who assaults</u> or <u>puts the person</u> in fear, <u>is</u> guilty of a felony punishable by imprisonment <u>for</u> not more than 15 years.
>
> (2) <u>As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the</u>

<u>larceny, or in an attempt to retain possession of the property.</u>

Mich. Comp. Laws § 750.530.

Through these amendments, "the [Michigan] Legislature intended an extensive deviation from [several aspects of] the common law rule [defining robbery]." *People v. Williams*, 814 N.W.2d 270, 277 (Mich. 2012). Indeed, "the Legislature was not undertaking an effort to (re)codify the common law understanding [of robbery] with the 2004 revisions," *id*. at 278, n.42, but, instead, undertook to "considerably broaden[] the scope of the [unarmed] robbery statute…." *Id.* at 280. The Legislature's departure from the common law rules of robbery indicates that the common law principles underlying the analysis in *Randolph* (upon which the Government relies) may well have considerably less relevance when it comes to interpreting the current version of the unarmed robbery statute.

Third (and in any event), the Michigan Supreme Court in *Randolph* did not directly address the level of force necessary to sustain a conviction under the unarmed robbery statute. Rather, as noted above, the court focused closely on the *time* at which force must be applied – whether the force must occur contemporaneously with the taking or before reaching safety – rather than upon the amount of force that must be applied. While the one footnote in *Randolph* cited by the Government does recite quotes from common law commentators that perhaps suggest that a robbery requires "violent force," *see Randolph*, 648 N.W.2d at 167-

16

68, n.6, this Court does not read *Randolph* as settling that issue. *See Ervin*, 198 F.Supp.3d at 1182 (rejecting argument that unarmed robbery under Michigan law must be a "crime of violence" in light of *Randolph* on the ground that *Randolph* "does not define a 'forceful act'"); *Lamb*, 2017 WL 730426, at *3 (same).[7] For all of these reasons, the Court concludes that *Randolph* does not undermine the Court's conclusion that Michigan's current unarmed robbery statute, under which Harris pleaded guilty, does not require a showing that the defendant used "violent force."

The Government also relies heavily on the Sixth Circuit's unpublished, split decision in *Matthews*, *supra*. In that case, the court rejected the defendant's argument that unarmed robbery under Michigan law falls short of a "crime of violence." But *Matthews* is distinguishable at least two critical respects. Most importantly, the court was construing the prior, pre-amendment version of the unarmed robbery statute, and the court chose not to "address" how and/or whether the change from "force and violence" to "force or violence" would impact the 'crime of violence' analysis. *Id.* at 844 n.1 (noting that the distinction between "force and violence" and "force or violence" is a "key difference" that future courts "may need" to address). Furthermore, the court did not squarely address the level of actual force required to sustain a conviction under the prior statute. Instead, the court addressed

---

[7] The *Lamb* decision referenced in the accompanying text above is the decision by another Judge of this court, not the decision of the Eighth Circuit cited by the Government and discussed *infra*.

the specific argument made by the defendant: namely, "that because one may commit unarmed robbery in Michigan by 'putting [another person] in fear,' the statute does not require 'the use, attempted used, or threatened use of force against another' and is therefore overly broad." *Id.* at 844. *Matthews* simply does not address the precise question confronted by this Court: whether the level of actual force required under the current version of Michigan's unarmed robbery statute is "violent force." Moreover, *Matthews* relied heavily on *Randolph*, but, as described above, *Randolph* lacks the force that it once had due to the 2004 amendments to the unarmed robbery statute.

The Government also relies upon *United States v. Tirrell*, 120 F.3d 670 (7th Cir. 1997) and *United States v. Lamb*, 638 F. App'x 575 (8th Cir. 2016), *vacated on other grounds by* 137 S.Ct. 494 (2016), but the Court also finds those decisions to be distinguishable. In both of those cases, the courts held that unarmed robbery under Michigan law is a "crime of violence." But the courts in those cases were construing the earlier, pre-amendment version of Michigan's unarmed robbery statute. Moreover, the Seventh Circuit decided *Tirrell* before the Michigan Court of Appeals issued the unbroken line of decisions – cited above at Section III(B)(1) – establishing that an unarmed robbery conviction may rest upon force short of "violent force." And while *Lamb* was decided after the Court of Appeals decisions, it neither acknowledged those decisions nor attempted to distinguish them. In

addition, *Tirrell* and *Lamb* each relied heavily on *Randolph*. For these reasons, the Court declines to follow *Tirrell* and *Lamb*.

Finally, the Government relies upon the following passage from the Michigan Supreme Court's decision in *People v. Kruper*: "Whenever the elements of force or putting in fear enter into the taking, and that is the cause which induces the party to part with his property, such taking is robbery. This is true regardless of how slight the act of force or the cause creating fear may be, *provided, in the light of the circumstances, the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand.*" 64 N.W.2d 629, 632 (Mich. 1954) (emphasis added). The Government reads the italicized language as confirming that the force necessary to sustain an unarmed robbery conviction must amount to "violent force." The Court respectfully disagrees. The Michigan Supreme Court in *Kruper* did not directly confront the question of how much force is necessary to support an unarmed robbery conviction. Instead, in the passage cited above, the court addressed whether the prosecution was required to elect between a charge of extortion and a charge of robbery. *See id.* Moreover, the court in *Kruper* was construing the prior, pre-amendment version of Michigan's unarmed robbery statute. *Kruger* is not contrary to the Court's holding here.

## C

The Court now turns to whether unarmed robbery is a "crime of violence" under the enumerated offenses clause.  In applying the enumerated offenses clause, a court first determines the generic definition of the relevant offense listed in that clause, and it then determines whether the state statute under which the defendant was convicted "criminalizes conduct 'broader than the generic definition' by 'reach[ing] conduct outside the scope of that covered by the generic definition.'" *Yates*, 866 F.3d at 733 (quoting *United States v. Cooper*, 739 F.3d 873, 880 (6th Cir. 2014)).

Unarmed robbery under Michigan law is not a "crime of violence" under the enumerated offenses clause because Michigan's unarmed robbery statute sweeps more broadly than the generic definition of robbery.  "Generic robbery … constitutes the 'misappropriation of property under circumstances involving immediate danger to the person.'" *Id*. at 734 (quoting *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006)).  As described in detail above, Michigan's unarmed robbery statute, as construed and applied by the Michigan Court of Appeals, covers thefts of property – including garden-variety purse snatchings – that do not pose an "immediate danger to the person." *Id.*  Thus, unarmed robbery under Michigan law does not amount to a "crime of violence" under the enumerated offenses clause.

## IV

For all of the reasons explained above, and for the reasons explained on the record at the sentencing hearing, the Court concludes that Harris' guilty plea to unarmed robbery does not qualify as a conviction for a "crime of violence" under § 2K2.1(a)(4) of the Guidelines. Accordingly, Harris' base offense level under the Guidelines is 14.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: August 17, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 17, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764